UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAYLONI KING,

                   Plaintiff,

v.

WASHINGTON HEALTH BENEFIT
EXCHANGE, a public-private partnership
created pursuant to RCW 43.71,

                   Defendant.

Case No. 3:17-cv-5880

**COMPLAINT FOR DAMAGES
AND
JURY DEMAND**

COMES NOW the Plaintiff, MAYLONI KING ("MAYLONI"), by and through her

attorneys of record, STEPHANIE STOCKER and HENDERSON LAW GROUP, PLLC, and

states her cause of action against the Defendant, as follows:

## I.    NATURE OF THE CASE

1.1    This is an action brought by Plaintiff MAYLONI against her former employer,

Defendant Washington Health Benefit Exchange ("WHBE"), for unlawful employment

practices as follows:

A.  DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF:

- RCW 49.60 (WA Law Against Discrimination) ("WLAD"); and

COMPLAINT FOR DAMAGES - 1
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

- 42 U.S.C. §§ 12101-12213 (Americans with Disabilities Act of 1990) ("ADA").
- 

B.  FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF:

- RCW 49.60 (WLAD); and

- 42 U.S.C. §§ 12101-12213 (ADA).

- DISCRIMINATION BASED ON SEX (PREGNANCY) IN VIOLATION OF: RCW 49.60 (WLAD); and

- 42 U.S.C. § 2000e, *et. seq.* (Title VII of the Civil Rights Act of 1964, *as amended*) ("Title VII").

C.  RETALIATION IN VIOLATION OF:

- RCW 49.60 (Discrimination Against Person Opposing Unfair Practice Protected by WLAD); and

- 42 U.S.C. § 2000e-3 (Discrimination Against Person Opposing Unfair Practice protected by Title VII).

1.2     This action seeks to provide relief to Plaintiff MAYLONI, who was adversely affected by such practices.

## II.     PARTIES

2.1     At all times material herein, Plaintiff MAYLONI has been a female residing in Pierce County, State of Washington.  At all times material herein, Plaintiff MAYLONI was an employee within the meaning of 42 U.S.C. §§2000e-(f) and RCW 49.60.040.

2.2     At all times material herein, Plaintiff MAYLONI has been diagnosed with epilepsy, a protected disability as defined by RCW 49.60.040(7) and the ADA (42 U.S.C. §§ 12101-12213).  Under the ADA, an impairment like epilepsy that is episodic or in remission is a disability, as it would substantially limit a major life activity when active. 29 C.F.R. §1630.3(j)(1)(vii).  Plaintiff is protected from discrimination based on her disability pursuant

COMPLAINT FOR DAMAGES - 2
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

to the WLAD (RCW 49.60) and the ADA (42 U.S.C. §§ 12101-12213).

2.3     At all relevant times herein, Defendant WHBE was an employer within the meaning of 42 U.S.C. §§2000e-(b) and RCW 49.60.040(11).   RCW 49.60 applies to employers in Washington State with eight or more employees and therefore applies to Defendant.  Title VII and the ADA apply to employers with 15 or more employees, including state and local governments, and therefore applies to Defendant.  WHBE was created in 2011 by WA State statute (RCW 43.71) as a quasi-governmental, "public-private partnership." RCW 43.71.  WHBE was charged with exercising functions delineated in Chapter 43.71 RCW and operating consistent with the federal Patient Protection and Affordable Care Act of 2010, P.L. 111-148 (as amended by the federal Health Care and Education Reconciliation Act of 2010, P.L. 111-152 and regulations/guidance issued thereunder) (appointed pursuant to RCW 43.71.020(1)). WHBE is responsible for the operation of Washington Healthplanfinder, an online marketplace for WA State individuals and WA State families to find, compare and enroll in Qualified Health Plans, Qualified Dental Plans and Washington Apple Health (Medicaid).

### III.     PROCEDURAL REQUIREMENTS

3.1     Plaintiff MAYLONI filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety (90) days of receipt of her Notice of Right to Sue (received by Plaintiff MAYLONI's attorney on July 31, 2017).

### IV.     JURISDICTION AND VENUE

4.1     All acts and omissions alleged to have occurred herein took place in Thurston County, Washington.  This court has subject matter jurisdiction over this case pursuant to 28

COMPLAINT FOR DAMAGES - 3
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4.2    This court has jurisdiction over the subject matter of this action under 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. §12101-12213.

4.3    The employment practices alleged to be unlawful were committed within the jurisdiction of the United State District Court for the District of Western Washington; venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## V.    STATEMENT OF FACTS

5.1    Plaintiff MAYLONI was hired by WHBE on November 8, 2013 as a Document Management Specialist.  She quickly exceeded expectations and was promoted on March 14, 2014 to an Eligibility Program Specialist.  Plaintiff MAYLONI consistently performed at or above expectations throughout her employment with WHBE.  She consistently arrived early to work, stayed late, took on additional job duties as needed, and made herself available to answer questions for un-trained and under-trained staff.

5.2    Plaintiff MAYLONI suffers from epilepsy, diagnosed at age three.  She experienced seizures at ages three, five, seventeen, and then several seizures of increasing severity at work and home during the years she was employed by WHBE.  Prior to working at WHBE, Plaintiff MAYLONI was able to manage her debilitating epilepsy symptoms through medication and lifestyle choices, as recommended by her doctor.  However, her doctor recognized that the consistent high levels of workplace stress forced upon Plaintiff MAYLONI as a result of WHBE's repeated discriminatory and retaliatory treatment towards her, directly resulted in the increased frequency and severity of her seizures, according to her treating physician.

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

5.3     On May 19, 2014, Plaintiff MAYLONI announced her pregnancy to her WHBE supervisor, Eligibility Manager, Ms. Natoshia Erickson.  The following week, Ms. Erickson conducted interviews for an additional Eligibility Specialist position, stating to Plaintiff MAYLONI that the purpose of the additional role was to provide the option of working from home for "maternity related absences."  Plaintiff MAYLONI was very interested in working from home during her pregnancy and maternity leave in order to more easily schedule her epilepsy and pregnancy-related doctor appointments, while maintaining her consistently positive work performance in her position with WHBE.  Plaintiff MAYLONI communicated to WHBE her interest in utilizing the work-from-home policy in the office.

5.4     On June 30, 2014, Plaintiff MAYLONI's father passed away.  She took leave for three days, following the standard bereavement policy of WHBE.  Two months later, her husband was hospitalized and underwent major surgery.  She advised Ms. Erickson and WHBE Human Resources Manager, Nancy Steele, of her husband's medical condition and recovery requirements – Plaintiff MAYLONI was her husband's primary caregiver during his recovery.  During this time, Plaintiff MAYLONI exhausted her allotted Paid Time Off ("PTO") with WHBE in order to provide care for her ailing husband.  Ms. Erickson required Plaintiff MAYLONI to produce doctor's notes for every absence beyond her PTO, untruthfully stating to Plaintiff MAYLONI that this was a new "standard" WHBE employee policy (Ms. Erickson later recanted this statement after her untruthfulness and discriminatory singling-out of Plaintiff MAYLONI was discovered by WHBE through its investigation following discrimination/retaliation claims brought by Plaintiff MAYLONI).  WHBE did not fire non-disabled Ms. Erickson after discovering her blatant lies told to Plaintiff MAYLONI re WHBE leave policy. WHBE later terminated disabled, pregnant, consistently top-

COMPLAINT FOR DAMAGES - 5
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

performing Plaintiff MAYLONI with zero incidents of ethics concern or work performance issues.

5.5     On December 1, 2014, Plaintiff MAYLONI requested information regarding the possibility of working from home for a short period of time prior to taking maternity leave in order to accommodate her pregnancy-related and epilepsy-related doctor's appointments.  Ms. Erickson denied Plaintiff MAYLONI's request and replied that there were simply "too many challenges."  At the same time, however, Ms. Erickson was allowing other employees, Ms. Raven Castro and Mr. Mathew Holloman, considerable flexibility to work from home on a consistent and ongoing basis.  Ms. Raven Castro and Mr. Mathew Holloman were both outside of Plaintiff MAYLONI's protected classes (i.e., unlike Plaintiff MAYLONI, both Ms. Raven Castro and Mr. Mathew Holloman were non-disabled and not pregnant).

5.6     Later that week, Ms. Erickson advised Plaintiff MAYLONI via email that because she had exhausted her PTO, used negative-40 PTO, and received donated PTO, any further absences would be unpaid.  According to Ms. Erickson, Plaintiff MAYLONI had exhausted any and all options for leave due to her FMLA-qualifying legitimate family health issues over the past year and now faced a significant loss of income immediately following the birth of her first child.  Plaintiff MAYLONI continuing to meet or exceed her job expectations for her work with WHBE.

5.7     On December 11, 2014, Plaintiff MAYLONI filed a Discrimination and Harassment complaint with Ms. Steele against Ms. Erickson.  WHBE opened an investigation to explore the claims brought by Plaintiff MAYLONI.

5.8     When interviewed as part of the investigation into Plaintiff MAYLONI's claims, Ms. Steele and HR Generalist, Gerard Buan, confirmed that doctor's notes are <u>not</u>

COMPLAINT FOR DAMAGES - 6
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

required for absences when PTO hours are exceeded, as outlined in the WHBE Employee Handbook.  In fact, none of Ms. Erickson's decisions and statements regarding Plaintiff MAYLONI's PTO and working from home were standard policy, as Ms. Erickson had falsely stated when denying Plaintiff MAYLONI leave for FMLA-qualifying legitimate family health issues.

5.9     When WHBE discussed these findings with Ms. Erickson, Ms. Erickson sent an email in which she changed her position on the leave issues against Plaintiff MAYLONI.

5.10    In late December 2014, the WHBE "work-from-home" policy was drafted and awaiting approved by Ms. Joanna Donbeck, Associate Director of Operations.

5.11    WHBE's work-from-home policy, made effective in early 2015, was in line with Governor's Inslee's EXECUTIVE ORDER 14-02, which was signed/made effective months prior on March 3, 2014, and titled "Expanding Telework and Flexible Work Hours Programs to Help Reduce Traffic Congestion and Improve Quality of Life."  In EXECUTIVE ORDER 14-02, Governor Inslee reaffirmed and expanded the WA State Telework and Flexible Work Hours Program, encouraging WA State employers to recognize the benefits of telework and flexible work hours for employees.  Order 14-02 states that "studies have shown that employers enjoy economic and organizational benefits resulting from increased employee productivity and morale, reduced use of employee sick leave, reduced hiring and training costs, and reduced office space and parking needs." *See* EXECUTIVE ORDER 14-02 (March 3, 2014) (superseded on June 3, 2016, by Gov. Inslee's EXECUTIVE ORDER 16-07 "Building a Modern Work Environment," which further expanded the WA State Telework and Flexible Work Hours Program for WA State employees.

5.12    EXECUTIVE ORDER 14-02 was in place at all times relevant herein, as it was

COMPLAINT FOR DAMAGES - 7
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

made signed/made effective on March 3, 2014 and remained in effect through June 3, 2016 when EXECUTIVE ORDER 16-07 was signed/made effective (6 months <u>after</u> WHBE terminated Plaintiff MAYLONI's employment).

5.13    As Plaintiff MAYLONI hoped to begin working from home Ms. Erickson informed Plaintiff MAYLONI that she would not be allowed to work from home like her co-workers.  Such co-workers included Mr. Mathew Holloman and Ms. Raven Castro, both of whom were allowed by WHBE to work from home for multiple reasons, such as not feeling well or their children being sick.   WHBE manager, Ms. Erickson, singled-out Plaintiff MAYLONI from her non-disabled and non-pregnant co-workers, denying Plaintiff MAYLONI work-from-home flexibility and forcing Plaintiff MAYLONI to remain working full-time onsite at WHBE to cover the work of a recently-terminated employee.  Ms. Erickson made this decision despite that:

(a) Plaintiff MAYLONI consistently achieved exceptional work performance in her job duties with WHBE;

(b)  Plaintiff MAYLONI was epileptic, known by WHBE management and co-workers, as she had suffered seizures while working alongside her work-mates on the cubicle floor at WHBE offices;

(c)  Plaintiff MAYLONI was in her third trimester of her pregnancy, made more difficult due to her existing epilepsy. Forced by Ms. Erickson to consistently work onsite at WHBE in the open-cubicle team room, MAYLONI's anxiety increased to panic attacks, which caused her to experience increased seizures. On January 2, 2015, MAYLONI was admitted to the hospital for preeclampsia.

5.14    In November 2014, the minimum salary for Eligibility Specialists was raised by

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

WHBE from $35,000.00/year to $40,000.00/year.  WHBE informed Plaintiff MAYLONI that her salary would remain at $40,000.00/year, which was <u>below</u> the new minimum for her role with WHBE.  Plaintiff MAYLONI's salary was raised only to the new minimum salary range, while others hired after Plaintiff MAYLONI and with less experience were started by WHBE at the higher salary pay.

5.15    After making complaints to WHBE about denying her the pay increase for her Eligibility Specialists role, Plaintiff MAYLONI was finally given a pay raise by WHBE on Dec. 30, 2014 to meet the <u>minimum</u> salary for her role with WHBE (backdated to November 2014).  Plaintiff MAYLONI's salary remained at this pay rate until WHBE terminated her employment on Oct. 15, 2015.  Her pay rate was the same as the salary for those WHBE employees who were newly hired and who came to WHBE with no relevant work experience.

5.16    On January 2, 2015, Plaintiff MAYLONI was unexpectedly admitted to the hospital for severe preeclampsia.  When Plaintiff MAYLONI was released from the hospital, she was under strict doctor's orders that she remain on bedrest until the birth of her child in late January 2015.  Plaintiff MAYLONI started her unpaid maternity leave earlier than planned to abide by WHBE's strict PTO policy while Plaintiff MAYLONI's co-workers continued enjoying their flexible paid "work-from-home" WHBE schedule.

5.17    In mid-February 2015, while on maternity leave, but communicating with WHBE regarding her March 2015 return to work, Plaintiff MAYLONI applied and interviewed for two newly available Senior Eligibility Specialist positions at WHBE.  As a highly skilled Specialist who had consistently performed Senior Eligibility Specialist job duties with excellent feedback from WHBE regarding her work performance, Plaintiff MAYLONI was uniquely qualified for this role, as compared to her WHBE co-workers.

COMPLAINT FOR DAMAGES - 9
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

5.18    In early March 2015, Ms. Erickson informed Plaintiff MAYLONI that the position was offered to two other candidates based on their "experience and demonstrated abilities to perform the functions of this position."  Both candidates had been hired as entry-level "project temps" in the role of Eligibility Specialist in November 2014, and had been trained and directly managed by Plaintiff MAYLONI for the duration of their employment at WHBE.  WHBE passed over Plaintiff MAYLONI in favor of co-workers who, unlike her, were not disabled and not on maternity leave

5.19    When Plaintiff MAYLONI returned from maternity leave on March 30, 2015, her role at the WHBE office had been reduced significantly.   Several of her core job responsibilities had been assigned to less experienced co-workers; she had been demoted from "specialist-level" at WHBE (who trained new and less-experienced employees) to "temporary staff-level," an entry-level position whose core job duty was to work on clearing eligibility back-logs.

5.20    On March 31, 2015, Plaintiff MAYLONI received a negative Employee Review from WHBE management that downplayed her consistently stellar work performance at WHBE, and included unfounded defamatory statements made about Plaintiff MAYLONI's ethics as an employee.

5.21    Plaintiff MAYLONI filed a retaliation complaint against Ms. Erickson, which addressed the retaliatory actions described above and the lack of corrective action taken by WHBE after her first complaints to WHBE regarding being singled-out by WHBE in favor of non-disabled and/or non-pregnant co-workers. On March 2, 2015, Ms. Erickson announced that she was moving to a new position within WHBE ("Business Analyst") and that Plaintiff MAYLONI's new supervisor was going to be Ms. Joanna Donbeck.

COMPLAINT FOR DAMAGES - 10
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

5.22   On April 9, 2015, Plaintiff MAYLONI met with Ms. Steele and Ms. Donbeck to discuss her complaints of retaliation and discrimination filed against WHBE management. She was informed that WHBE had conducted an investigation that consisted of a meeting with Ms. Erickson, without Plaintiff's participation.   On April 9, 2015Nancy Steele dismissed Plaintiff MAYLONI's grievances and closed the investigation, providing MAYLONI documentation of Ms. Erickson's responses to MAYLONI's list of grievances.   WHBE management stated that the reason they did not promote Plaintiff MAYLONI to either of the available Senior Eligibility Specialist roles open in February 2015, was the negative Employee Review Plaintiff MAYLONI received immediately after her return from maternity leave on March 31, 2015.

5.23   Through the spring of 2015, Plaintiff MAYLONI continued to excel at her job duties for WHBE.   Working onsite every day, as required by WHBE, Plaintiff MAYLONI focused on her work, striving to ignore that her epilepsy symptoms began to worsen, including severe anxiety and workplace seizures.   During these months in the spring of 2015, WHBE allowed the new Senior Eligibility Specialists who were hired in lieu of Plaintiff MAYLONI (Mr. Jon Rambo and Ms. Raven Castro, both of whom were not disabled) to have work-from-home flexibility in their schedules.

5.24   In June 2015, with the worsening of her epilepsy symptoms (including severe anxiety and workplace seizures) and at the directive from her treating physician, Plaintiff MAYLONI applied for full-time work-from-home accommodation under the Americans with Disabilities Act (ADA) from WHBE.   Plaintiff MAYLONI's full-time work-from-home accommodation was approved by WHBE on July 7, 2015, and her accommodation became effective that same day.

COMPLAINT FOR DAMAGES - 11
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

5.25    Plaintiff MAYLONI's work-from-home ADA accommodation starting July 7, 2015 was proven successful for both Plaintiff MAYLONI and WHBE:

> (a) Plaintiff MAYLONI's epilepsy symptoms were better managed as a result of her work-from-home ADA accommodation, as attested by Plaintiff MAYLONI's treating physician in ADA paperwork submitted to WHBE on June 9, 2015, and again on Oct. 1, 2015.

> (b) With her ADA accommodation in place and her epilepsy symptoms better managed, Plaintiff MAYLONI'S work performance for WHBE improved beyond her established positive work performance at WHBE.    Plaintiff MAYLONI'S work productivity, accuracy and efficiency increased as a result of the accommodation.

5.26    Plaintiff MAYLONI consistently performed the essential functions of her job for WHBE.  In an "ADA Follow-Up Meeting" on August 13, 2015, WHBE manager Joanna Donbeck provided a positive job review that MAYLONI was more productive since working from home under ADA accommodation.

5.27     When Plaintiff MAYLONI learned that she was pregnant with her second child, she shared this news with WHBE via a letter mailed and emailed by her attorney. Page 4 of that letter clearly states that "we herein inform WHBE that Plaintiff MAYLONI is pregnant with her second child, due March 16, 2016."

5.28    In response to the Oct. 9, 2015 letter, Nancy Steele scheduled an "ADA interactive process" phone call with MAYLONI to occur on October 15, 2015.  Plaintiff MAYLONI informed Nancy Steele that her attorney, Stephanie Stocker, would be joining the conference call, which Nancy Steele agreed to.

5.29    On October 15, 2015, Ms. Steele informed MAYLONI that Plaintiff MAYLONI's ADA accommodation was ending immediately.   Ms. Steele stated that

COMPLAINT FOR DAMAGES - 12
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

MAYLONI's employment was terminated due to a disability separation, effective immediately.  A formal letter dated October 15, 2015 to Plaintiff MAYLONI followed confirming that WHBE had terminated Plaintiff MAYLONI's employment because WHBE was "unable to provide reasonable accommodation for your current medical condition(s)."

## VI.   CAUSES OF ACTION

6.1     Plaintiff hereby re-alleges the substance of sections I, II, III, IV, and V with the same force and effect as though fully set forth herein, and apply those facts to each cause of action.

## FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### IN VIOLATION OF RCW 49.60 (WLAD)

6.2     The WLAD (RCW § 49.60, *et seq*.) is a broad and remedial statute that was originally enacted in 1949 as an employment discrimination law.  WA State enacted WLAD 15 years before the Civil Rights Act of 1964.  WLAD is potent.  It contains a sweeping policy statement both denouncing discrimination in a variety of forms and mandating that the law be liberally construed for the accomplishment of the purposes thereof.

6.3     The WLAD (RCW 49.60) provides the right to hold employment without discrimination on the basis of disability. RCW 49.60.030(1)(a).   The WLAD defines a disability as a:

    1.  Sensory, mental or physical impairment that is:

        (a)  Medically cognizable or diagnosable;

        (b)  Exists as a record or history; or

        (c)  Is perceived to exist whether or not it does.

    2.  Can be temporary or permanent.

    3.  Can be mitigated or unmitigated by treatment.

COMPLAINT FOR DAMAGES - 13
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

*See* RCW 49.60.040(7).  Plaintiff MAYLONI's epilepsy, diagnosed and on-going since age three (3), is a medically diagnosed condition and is thus a protected disability under the WLAD. As an employee with a legally protected disability pursuant to RCW 49.60.040(7), Plaintiff was protected by the WLAD (RCW 49.60) from discrimination by her employer, Defendant.

6.4     Under the WLAD, to establish a claim of discrimination on the basis of disability, a plaintiff has the burden to prove that:

1.   He or she has or is perceived to have a disability;

2.   That he or she is able to perform the essential functions of the job, with reasonable accommodation; and

3.   That his or her disability, or the perception of the disability, was a substantial factor in the defendant's decision to take an adverse employment action against the plaintiff.

WPI 330.32.

6.5     Washington Courts utilize the "substantial factor" test in analyzing discrimination under the WLAD.  The ultimate burden in cases brought under RCW 49.60.180 is to present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action.   In the absence of direct evidence of discriminatory intent, courts employ the *McDonnell Douglas* burden-shifting framework to analyze discrimination claims at the summary judgment stage. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this scheme, the plaintiff first must establish a *prima facie* case. This raises a presumption of discrimination and shifts the burden to the defendant

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

to show a legitimate non-discriminatory rationale for the employment decision.   If the defendant offers such a rationale, the plaintiff must offer evidence that the employer's rationale was actually a pretext for discrimination. These burdens are burdens of production, not persuasion, and they may be proved through direct or circumstantial evidence.

6.6     Here, Plaintiff MAYLONI meets the three elements required to present a claim of discrimination against Defendant on the basis of her epilepsy disability (symptoms of which were further exacerbated by her second pregnancy, affording her additional protections under the WLAD and ADA):

      a.   Plaintiff MAYLONI's diagnosed epilepsy (with symptoms exacerbated by her second pregnancy) are a recognized disability under the WLAD;

      b.   Plaintiff MAYLONI demonstrated that she was able to perform the essential functions of her job for WHBE with reasonable accommodation. Plaintiff MAYLONI was doing satisfactory work for WHBE and, in fact just prior to her Oct. 15, 2015 termination, had been praised by her WHBE supervisor, Joanna Donbeck, for her exceptional work performance and level of productivity while on her ADA work-from-home accommodation July 7, 2015-Oct. 2015; and

      c.   Lastly, Plaintiff MAYLONI's disabilities were a substantial factor in the Defendant's decision to take an adverse employment action against her; Plaintiff MAYLONI was discharged under circumstances that raise a reasonable inference of unlawful discrimination.  WHBE terminated Plaintiff MAYLONI'S employment just 6 days after learning of Plaintiff MAYLONI's second pregnancy and the exacerbation of her epilepsy symptoms caused by her pregnancy.   This comes just after Plaintiff MAYLONI was praised by her

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

WHBE supervisor, Joanna Donbeck, for her exceptional work performance and level of productivity while on her ADA work-from-home accommodation July 7, 2015-Oct. 2015.

6.7     Additionally, Defendant's stated reason for its discriminatory conduct against Plaintiff MAYLONI (*i.e.*, that she showed poor work performance, citing WHBE's March 31, 2015 unfounded/retaliatory negative Employee Review of Plaintiff MAYLONI) – was not the true reason for Defendant's conduct towards her, but rather was mere pretext to hide Defendant's discriminatory animus towards Plaintiff MAYLONI based on her protected disability (symptoms of which were exacerbated by her second protected).

<u>Damages under WLAD</u>

6.8     As a result of Defendant's discriminatory conduct against Plaintiff MAYLONI and the severe emotional distress that Plaintiff MAYLONI suffered as a direct result, Plaintiff MAYLONI is entitled to recover damages under the WLAD.  Remedies for violation of the WLAD are broad.  The WLAD provides that: Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended… *See* RCW 49.60.030(2).   The WLAD provides for an award of compensatory damages, recovery for personal injuries for emotional distress, humiliation, and pain & suffering, attorney's fees and costs.

///

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

### SECOND CAUSE OF ACTION
DISABILITY DISCRIMINATION IN VIOLATION
OF 42 U.S.C. §§ 12101-12213 (ADA)

6.9     The Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101-12213) is a federal mandate that prohibits discrimination against individuals with disabilities in critical areas such as employment, housing, public accommodations, education, and access to public services. *Id.* §12101(a)(3), (b).  Title I of the ADA protects employees of employers with 15 or more employees, including state and local governments, and therefore applies to Defendant.

6.10     Plaintiff MAYLONI's diagnosed epilepsy (ongoing since age 3) is a disability recognized by the ADA.  Plaintiff MAYLONI's two pregnancies while working at WHBE raise additional protections for Plaintiff MAYLONI, including but not limited to her second pregnancy causing the exacerbation of her epilepsy symptoms (as diagnosed by her doctor in summer 2015, ADA paperwork for which was submitted to WHBE on Oct. 1, 2015).  While pregnancy itself is not a disability, pregnant workers and job applicants are not excluded from the protections of the ADA. Changes to the definition of the term "disability" resulting from enactment of the ADA Amendments Act of 2008 (ADAAA) make it much easier for pregnant workers with pregnancy-related impairments to demonstrate that they have disabilities for which they may be entitled to a reasonable accommodation under the ADA.   ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The expanded definition of "disability" under the ADA also may affect the PREGNANCY DISCRIMINATION ACT ("PDA") requirement that pregnant workers with limitations be treated the same as employees who are not pregnant but who are similar in their ability or inability to work by expanding the number of nonpregnant employees who could serve as comparators where disparate treatment under the PDA is alleged. 42 U.S.C. § 2000e(k).

6.11     Defendant violated the ADA when they terminated Plaintiff MAYLONI's employment based on her ADA-recognized epilepsy disability (with further protections for the exacerbation of her epilepsy symptoms due to her second pregnancy–diagnosed by her

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

treating physician).  As set forth by the 9th Circuit "Manual of Model Civil Jury Instructions"

12.1 ADA EMPLOYMENT ACTIONS—ELEMENTS:

"As to the plaintiff's claim that [his] [her] disability was the reason for the defendant's decision to [[discharge] [not hire] [not promote] [demote] [*state other adverse action*]] [him] [her], the plaintiff has the burden of proving the following by a preponderance of the evidence:

> 1. The plaintiff has a disability [as defined by the ADA];
> 2. The plaintiff was a qualified individual [as defined by the ADA]; and
> 3. The plaintiff was discharged … because of the plaintiff's disability.

If you find that plaintiff has proved all of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant." *See* 9th Circuit "Manual of Model Civil Jury Instructions"

6.12    Here, Plaintiff MAYLONI meets the above three elements and will prove by a preponderance of the evidence that Defendant violated the ADA when they terminated Plaintiff MAYLONI's employment based on her disability:

<u>Plaintiff MAYLONI has a protected disability as defined by the ADA</u>

6.13    Under the ADA, a "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2).

6.14    Plaintiff MAYLONI's epilepsy is a disability protected by the ADA. Plaintiff MAYLONI's diagnosed epilepsy is protected disability within the meaning of the ADA's definition of disability because they are "substantially limited in neurological functions and other major life activities" (for example, speaking or interacting with others) when seizures occur.  Under the ADA, an impairment like epilepsy that is episodic or in remission is a disability, as it would substantially limit a major life activity when active. 29 C.F.R. §1630.3(j)(1)(vii).

6.15    Additionally, because the determination of whether an impairment is a disability is made without regard to the ameliorative effects of mitigating measures, epilepsy is a

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

disability even if medication or surgery limits the frequency or severity of seizures or eliminates them altogether.  The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. Id. at §1630.3(j)(1)(vi). An individual who, because of the use of a mitigating measure, has experienced no limitations (*e.g.,* seizures), or only minor limitations, related to the impairment may still be an individual with a disability, where there is evidence that in the absence of an effective mitigating measure the individual's impairment would be substantially limiting. *Id*. at Part 1630, app, § 1630.3(j)(1)(vi).

6.16    Moreover, an individual like Plaintiff MAYLONI with a past history of epilepsy (diagnosed at age three) also has a disability within the meaning of the ADA. *Id*. at §1630.2(k).

<u>Plaintiff MAYLONI was a qualified individual as defined by the ADA</u>

6.17    Under the ADA, a plaintiff is "qualified" if the plaintiff can show the ability to perform the essential functions of the job with or without a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A), 12111(8); *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir.2013); *Cooper v. Neiman Marcus Group*, 125 F.3d 786, 790 (9th Cir.1997).  A plaintiff can demonstrate that he is a "qualified individual" by establishing that "a reasonable accommodation existed that would have enabled him to perform the essential functions of his former position". *Kirbyson*, 795 F. Supp. 2d at 942 (N.D. Cal. 2011).  Continuous leaves of absence can be a reasonable accommodation, as long as the periods of absence are not indefinite. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 1136 (9th Cir. 2001) (citing to *Kimbro v. Atlantic Richfield Co*., 889 F.2d 869 (9th Cir. 1989), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53 (1990)).

6.18    Here, Plaintiff MAYLONI consistently performed the essential functions of her job for WHBE and, in fact, was proven to do so *more productively* during her July-Oct. 2015 work-from-home ADA accommodation, as communicated to Plaintiff MAYLONI by WHBE manager, Joanna Donbeck, during MAYLONI's "ADA Follow-Up Meeting" with WHBE on August 13, 2015.

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

6.19    Additionally, Plaintiff MAYLONI's treating physician instructed WHBE on June 9, 2015 and again on October 1, 2015, that the best accommodation for Plaintiff MAYLONI's epilepsy that would result in the most sustained work productivity with the least effect on the aggravation of her daily epilepsy symptoms was that she work from home.  This was not specific to Plaintiff MAYLONI's inability to drive to and from work, as proffered by Defendant WHBE, but rather was that Plaintiff MAYLONI working onsite indefinitely at the WHBE offices would exacerbate and potentially worsen Plaintiff MAYLONI's daily epilepsy symptoms.  As required by WHBE, Plaintiff MAYLONI provided ADA paperwork from her treating physician, Dr. Au, on June 9, 2015, and again on Oct. 1, 2015, wherein Dr. Au wrote that:

> "Plaintiff MAYLONI's disability does not restrict her ability to perform the essential functions of her job with WHBE as set forth in the attached position description for Plaintiff MAYLONI's role.  Plaintiff MAYLONI having the ability to work from home will help her to better continue to meet and exceed expectations for her job functions at WHBE as set forth in the job description."

*See* ADA Paperwork signed by Dr. Au on June 9, 2015; s*ee also* ADA Paperwork signed by Dr. Au on Oct. 1, 2015, reiterating her recommendation that Plaintiff MAYLONI's disabilities require that she work from home.

6.20    Additionally, Plaintiff MAYLONI was a "qualified individual" under the ADA because Plaintiff MAYLONI's 100% work-from-home ADA accommodation was not one she intended to be indefinite.  As stated by Plaintiff MAYLONI's physician, Dr. Au, Plaintiff MAYLONI's epilepsy symptoms grew increasingly more severe after she became pregnant with her second baby (summer 2015).  During the Oct. 15, 2015, ADA "interactive process" conference call with WHBE's Nancy Steele, Plaintiff MAYLONI requested that WHBE extend her proven-successful work-from-home accommodation from Oct. 2015-March 2016 (only until her baby was born in March 2016 – just 5 months away), at which time she would take unpaid maternity leave.  Plaintiff MAYLONI further suggested to WHBE that, upon her return to work after maternity leave, she, WHBE and her treating physician could reassess her ADA work-from-home accommodation to determine what days she could return to working

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

onsite at WHBE.

Plaintiff MAYLONI was discharged by Defendant because of her disability.

6.21    Under the ADA, an employee may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus or use the burden-shifting method set forth in *McDonnell Douglas.* The temporal proximity between the announcement of health issues and the adverse action can be sufficient to prove discrimination. *Vale v. Great Neck Water Pollution Control Dist*., 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (denying defendant's dispositive motion when "the Plaintiff alleges that just days after returning to work following the injury, the Defendant modified her job responsibilities, requiring her to perform certain labor-intensive tasks outside the scope of her job classification"); *Phillips v. PacifiCorp*, 304 F. Appx. 527, 530 (9th Cir. 2008) ("As Mortensen had received good performance reviews previously, but received negative reviews and was placed on a performance improvement plan shortly after her discrimination complaint, the proximity alone is enough to establish a causal link").

6.22    Here, WHBE ended Plaintiff MAYLONI's proven-successful ADA work-from-home accommodation and abruptly terminated Plaintiff MAYLONI's employment on October 15, 2015, without discussion (interactive or otherwise) regarding possible alternative accommodations for Plaintiff MAYLONI's epilepsy disability (symptoms of which were exacerbated by her second pregnancy).   This was despite WHBE reporting to Plaintiff MAYLONI on August 13, 2015, that her work productivity with WHBE has increased tremendously as a result of the accommodation and that the accommodation was, in Nancy Steele's words, "viewed as a success by the agency."

Damages under the ADA

6.23    42 U.S.C. § 12117(a) applies all powers, remedies, and enforcement provisions of Title VII to any persons alleging employment discrimination on the basis of disability.  As such, Plaintiff MAYLONI is entitled to and will seek all available remedies under Title VII

COMPLAINT FOR DAMAGES - 21
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

against Defendant, including but not limited to compensatory damages, punitive damages, back pay, lost future earnings, attorney's fees, and reasonable expert witness fees.  Back pay consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination to the date of trial.

### THIRD CAUSE OF ACTION

FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION
OF WLAD AND ADA

6.24    The WLAD and ADA not only prohibit employers from discriminating against employees with disabilities; they also require employers to make reasonable accommodations to allow employees with disabilities to perform their job.

### WLAD

6.25    Under the WLAD, a plaintiff must show (1) that he or she is disabled; (2) that he or she is qualified to perform the essential functions of the job in question; (3) he or she gave the employer notice of the abnormality and its accompanying substantial imitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the disability.

### ADA

6.26    Under the ADA, a Plaintiff must show the following four elements to prove that an employer failed to accommodate their disability in violation of the ADA:

  a.  The employee has a disability as defined by the ADA;

  b.  The employee informed the employer of his or her condition and requested an accommodation;

  c.  There was an accommodation available that would have been effective and would not have posed an undue hardship to the employer.  "Generalized conclusions [from the employer] will not suffice to support a claim of undue hardship." 29 C.F.R. pt. 1630 app. §1630.15(d) (1996).  "Instead, undue hardship must be based on an individualized assessment of current

COMPLAINT FOR DAMAGES - 22
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

1
2

circumstances that show that a specific reasonable accommodation would cause **_significant difficulty or expense_** to the employer." *Id*.; and

3

    d.  The employer failed to provide an accommodation.

4
5

    6.27  Here, Plaintiff MAYLONI meets the four elements in showing that Defendant failed to accommodate her disability in violation of both the WLAD and the ADA.

6
7
8
9
10

    a.  At the time of her termination by WHBE on Oct. 15, 2015, Plaintiff MAYLONI had a disability protected by the ADA: epilepsy (with further protections for the exacerbation of her epilepsy symptoms due to her second pregnancy–diagnosed by her treating physician).

11
12
13
14
15
16

    b.  On Oct. 15, 2015, at her ADA "interactive process" meeting with WHBE, Plaintiff MAYLONI requested an extension until March 2016 of her proven-successful 3-month ADA work-from-home accommodation (her second baby was due March 2016 and her epilepsy symptoms were exacerbated by her pregnancy, as stated by her treating physician, Dr. Au).

17
18
19
20
21
22

    c.  There was an accommodation available that would have been effective and would not have posed an undue hardship to the employer – Plaintiff MAYLONI continuing to work from home through Dec. 2015 when her doctor planned to re-evaluate her worsening epilepsy symptoms, as exacerbated by her second pregnancy.

23
24
25
26

        i.  Plaintiff MAYLONI's work-from-home accommodation cost WHBE $0.00 to implement (as opposed to, for example, if Plaintiff MAYLONI required specific equipment/ramps/hearing devices, etc. for WHBE to accommodate her disability).

27
28

        ii.  Plaintiff MAYLONI's work-from-home accommodation from July-Oct.

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

2015 had already proven "very successful" for WHBE (WHBE Management, Nancy Steele's, words in Sept. 2015 re Plaintiff MAYLONI's successful ADA accommodation for the prior 90 days).

    iii.   Plaintiff MAYLONI's request in Oct. 2015 for an extension of her ADA accommodation was not for an indefinite period of time, but rather was simply a request for a 2-month extension of her existing proven-successful 90-day ADA work-from-home accommodation (in line with her doctor's directive that Plaintiff MAYLONI be re-evaluated in Dec. 2015 to assess her epilepsy symptoms that were exacerbated by her second pregnancy).

    iv.   Plaintiff MAYLONI's request for a 2-month extension of her existing proven-successful 90-day ADA work-from-home accommodation was hardly an undue hardship on WHBE in light of: (1) WHBE's work-from-home policy adopted in December 2014; and (2) Governor Inslee's EXECUTIVE ORDER 14-02 (March 3, 2014) encouraging WA State employers (including WHBE) to expand telework/work-from-home programs to help reduce traffic congestion and improve quality of life. These are both policies encouraging work-from-home flexibility for all employees (including non-disabled employees).  Plaintiff MAYLONI, having an ADA-recognized disability (epilepsy), the symptoms of which were severely exacerbated by her second pregnancy (affording her additional protections under the ADA and WLAD), should afford Plaintiff MAYLONI even MORE flexibility to work from home than these two policies allow.

   d.  Lastly, in Oct. 2015, WHBE failed to offer (or even discuss) with Plaintiff MAYLONI a continued accommodation for her disabilities and instead ended her proven-successful ADA accommodation and terminated her employment on Oct. 15, 2015.

COMPLAINT FOR DAMAGES - 24
(Case No. 3:17-cv-5880)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.28    This compared to the flexibility that Defendant afforded to Plaintiff MAYLONI's non-disabled and non-pregnant co-workers.   In early-mid 2015, Defendant allowed Plaintiff MAYLONI's non-disabled and non-pregnant co-workers (including Mr. Mathew Holloman and Ms. Raven Castro), to work from home for multiple reasons, such as them not feeling well or their children being sick.   Unlike Plaintiff MAYLONI, both Mr. Mathew Holloman and Ms. Raven Castro were not disabled and were not pregnant at the time (either of which are the basis for disparate treatment by WHBE against epileptic and pregnant Plaintiff MAYLONI, who was not only pregnant, but was also disabled due to her epilepsy). WHBE manager, Ms. Erickson, singled-out Plaintiff MAYLONI from her non-disabled and non-pregnant co-workers, denying Plaintiff MAYLONI work-from-home flexibility and forcing Plaintiff MAYLONI to remain working full-time onsite at WHBE to cover the work of a recently-terminated employee.  Ms. Erickson made this decision despite that:

a.   Plaintiff MAYLONI consistently achieved exceptional work performance in her job duties with WHBE (as a top performer, which was she being punished and singled-out with the denial of work-from-home flexibility).

b.   Plaintiff MAYLONI was epileptic, known by WHBE management and co-workers, as she had suffered seizures while working alongside her work-mates on the cubicle floor at WHBE offices. Plaintiff MAYLONI needed the flex schedule more than most other employees to better accommodate her many doctor's appointments.

c.   Plaintiff MAYLONI was in her third trimester of what had been a difficult pregnancy, health-wise.  This was made more difficult due to the fact that Plaintiff MAYLONI's pregnancy exacerbated and increasingly intensified her existing epilepsy symptoms.   For example, Plaintiff MAYLONI developed severe anxiety as she was forced by Ms. Erickson to consistently work onsite at WHBE in the open-cubicle team room. Plaintiff MAYLONI's anxiety increased to full-blown panic attacks, which caused her to have increased seizures, all the while Ms. Erickson forced Plaintiff MAYLONI to continue working onsite until

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

Jan. 2, 2015 (when Plaintiff MAYLONI was admitted to the hospital for preeclampsia).

6.29   Moreover, after Plaintiff MAYLONI returned from maternity leave in late March 2015 (and continuing until July 2015 when Plaintiff MAYLONI's ADA accommodation began), Defendant required Plaintiff MAYLONI to work onsite 100% of the time, while allowing the non-disabled and non-pregnant new Senior Eligibility Specialists who were hired in lieu of Plaintiff MAYLONI (Mr. Jon Rambo and Ms. Raven Castro) to have work-from-home flexibility in their schedules.  Additionally, when Mr. Jon Rambo and Ms. Raven Castro were working onsite at WHBE, they were allowed by WHBE to take several extended breaks and came and left work as they pleased.

<u>WHBE did not Engage in Interactive Process</u>

6.30   The WLAD and ADA each require employers to engage in an interactive process with the employee to come up with an accommodation that will work.  The WLAD and ADA each require employers to engage in an interactive process when a disabled employee requests an accommodation or when the employer recognizes the employee's need for an accommodation. EEOC regulations outline the nature of the interactive process. *See* 29 C.F.R. § 1630.2(o)(3). In ***Barnett v. U.S. Air, Inc.***, 228 F.3d 1105, 1113 (9th Cir. 2000) (vacated on other grounds, 535 U.S. 391 (2002)), the Ninth Circuit, *en banc*, described the employer's role in the required mandatory "interactive process" stating:

> [W]e join explicitly with the vast majority of our sister circuits in holding that the interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation.

228 F.3d at 1114. This requirement is mirrored in Ninth Circuit pattern jury instructions, which state, "to establish a defendant's duty to provide a reasonable accommodation, the plaintiff must prove . . . the plaintiff requested of the defendant an accommodation due to a disability," or, in the alternative, that "the defendant knew or had reason to know that the plaintiff has a disability, was experiencing workplace problems because of the disability; and the disability

COMPLAINT FOR DAMAGES - 26
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

prevented the plaintiff from requesting a reasonable accommodation." 9th Cir. Instruction 12.7 ADA. The interactive process requires:

      a.  Direct communication between the employer and employee to explore in good faith the possible accommodations;

      b.  Consideration of the employee's request; and

      c.  Offering an accommodation that is reasonable and effective.

*Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1089 (9th Cir. 2002). An employer's duty to engage in the interactive process ends when the employee requesting the accommodation fails to provide medical documentation supporting his request or otherwise becomes uncooperative. *Allen v. Pac. Bell*, 348 F.3d 1113, 1115–16 (9th Cir. 2003). Failure to engage in the interactive process is actionable. *Wright v. United Parcel Serv., Inc*., 609 F. Appx. 918, 922 (9th Cir. 2015).

      6.31    Under both federal and state law, "[r]easonable accommodation. . .envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-409, 899 P.2d 1265 (1995). To qualify for reasonable accommodation under the WLAD, an impairment must be known or shown through an interactive process to exist in fact, and "[t]he impairment must have a substantially limiting effect upon the individual's ability to perform his or her job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment[.]" RCW 49.60.040(7)(d). "The employer has a duty to determine the nature and extent of the disability, but only after the employee has initiated the process by notice." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, at 780 (Division I, 2011). "A reasonable accommodation requires an employer to take 'positive steps' to accommodate an employee's disability." *Harrell v. Washington State ex rel. Dep't of Soc. Health Servs.*, 170 Wn. App. 386, 398, 285 P.3d 159 (2012). Under Washington law, the accommodation must be medically necessary. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, at 193 (2001).

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

6.32    Defendant violated the WLAD and ADA by failing to accommodate Plaintiff MAYLONI's epilepsy disability, a diagnosed disability recognized by the ADA, the symptoms of which were exacerbated by her second pregnancy in 2015 (as stated by her doctor in WHBE ADA required paperwork on June 9, 2015, and again on Oct. 1, 2015).

6.33    Plaintiff MAYLONI consistently performed the essential functions of her job and, in fact, did so *more productively* during her work-from-home ADA accommodation, as stated by WHBE in Plaintiff MAYLONI's ADA Follow-Up Meeting on August 13, 2015.

6.34    WHBE did not enter into a good faith interactive process with Plaintiff MAYLONI prior to ending her proven-successful ADA accommodation.

6.35    Rather, WHBE collected the clear directives from Plaintiff MAYLONI's doctor (dated October 1, 2015, stating that Plaintiff MAYLONI could not drive until December 2015 – pending her doctor's approval – due directly to the exacerbation of Plaintiff MAYLONI's epilepsy symptoms caused by her second pregnancy).  Then, instead of following WLAD and ADA law dictating that they working interactively with Plaintiff MAYLONI to discuss options for extending her proven-successful accommodation for just two months (until Dec. 2015 when Plaintiff MAYLONI's treating doctor planned to re-evaluate her epilepsy symptoms, exacerbated by her second pregnancy), WHBE management (Nancy Steele) started the Oct. 15, 2015, "interactive process" conference call with Plaintiff MAYLONI and her attorney by saying, in regards to the news of Plaintiff MAYLONI's second pregnancy, "Wow, you're really going to have your hands full, aren't you?"  Nancy Steele then told Plaintiff MAYLONI that her ADA accommodation was ending immediately and that her employment was terminated, effective immediately, due to a disability separation.

<u>Damages under the WLAD</u>

6.36    As a result of Defendant failing to accommodate Plaintiff MAYLONI's epilepsy disability, a diagnosed disability recognized by the WLAD, the symptoms of which were exacerbated by her second pregnancy in 2015 and the severe emotional distress that Plaintiff MAYLONI suffered as a direct result, Plaintiff MAYLONI is entitled to recover damages under the WLAD.  Remedies for violation of the WLAD are broad.  The WLAD

COMPLAINT FOR DAMAGES - 28
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

provides that: Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended… *See* RCW 49.60.030(2).    The WLAD provides for an award of compensatory damages, recovery for personal injuries for emotional distress, humiliation, and pain & suffering, attorney's fees and costs.

<u>Damages under the ADA</u>

6.37    42 U.S.C. § 12117(a) applies all powers, remedies, and enforcement provisions of Title VII to any persons alleging employment discrimination on the basis of disability.  As such, Plaintiff MAYLONI is entitled to and will seek all available remedies under Title VII against Defendant, including but not limited to compensatory damages, punitive damages, back pay, lost future earnings, attorney's fees, and reasonable expert witness fees.  Back pay consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination to the date of trial.

**FOURTH CAUSE OF ACTION**
DISCRIMINATION BASED ON SEX (PREGNANCY)
IN VIOLATION OF WLAD (RCW 49.60) AND TITLE VII

6.38    Under both the WLAD and Title VII, pregnancy discrimination is discrimination "because of sex."

<u>WLAD</u>

6.39    The WLAD "prohibits employment practices that disadvantage women because of pregnancy or childbirth." WAC 162-30-020(1). WAC 162-30-020(3)(a) provides that it "is an unfair practice for an employer, because of pregnancy or childbirth, to … [r]efuse to hire or promote, terminate, or demote, a woman…". To reach the full scope of disadvantages faced by women because of employment policies that do not take into account this biological difference, pregnancy is defined as including, "but is not limited to, pregnancy, the potential

COMPLAINT FOR DAMAGES - 29
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

to become pregnant, and pregnancy related conditions." WAC 162-30-020(2)(a).

6.40    The WLAD requires employers to provide leave during a period of pregnancy or childbirth related sickness, regardless of whether the employer provides leave to other employees. WAC 162-30-020(4)(a) (employers must "provide a woman a leave of absence for the period of time that she is sick or temporarily disabled because of pregnancy or childbirth" regardless of leave policies applicable to other employees).   The prohibition of adverse actions and the leave requirement appeared in WAC 162-30-020(2) and (4), WAC 162-30-020(5) (1972).  In 1973, although there were amendments, the provisions remained. *See* WAC 162-30-020(4) and (5) (1973). Subsequent amendments in 1999 provided the current version of the regulation and provided the definition of "pregnancy" at WAC 162-30-020(2)(a), carried the leave provision forward at WAC 162-30-020(5)(a) and (b), and replaced the former adverse treatment provision with the current list of unfair practices found at WAC 162-30-020(3), which includes discrimination in hiring practices. WSR 99-15-025.

6.41    The WLAD specifically prohibits an employer from making decisions based on stereotypes about pregnant women:

It is an unfair practice to base employment decisions or actions on negative assumptions about pregnant women, such as:

(i) Pregnant women do not return to the job after childbirth;
(ii) The time away from work required for childbearing will increase the employer's costs;
(iii) The disability period for childbirth will be unreasonably long;
(iv) Pregnant women are frequently absent from work due to illness;
(v) Clients, co-workers, or customers object to pregnant women on the job;
(vi) The terms or conditions of the job may expose an unborn fetus to risk of harm.

WAC 162-30-020(3)(c).

COMPLAINT FOR DAMAGES - 30
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

6.42    Under the WLAD (RCW 49.60), discrimination on the basis of pregnancy constitutes sex discrimination. To prove that you have been discriminated against based on your sex, you must show:

   a.   That you are a member of a protected class (women are a protected class);

   b.   That you are qualified for the employment position or of performing substantially equal work;

   c.   That an adverse employment decision including termination or denial of promotion was taken against you;

   d.   That the person your employer selected as a replacement or for promotion ahead of you is not a pregnant woman; and

   e.   Washington employers must also return the woman to the same job or a "similar job of at least the same pay" after taking leave for disability relating to pregnancy or childbirth. WAC 162-30-020(4)(c). Refusal to do so must be justified by proven "business necessity."

6.43    Here, Plaintiff MAYLONI meets the above five elements showing discrimination on the basis of sex (pregnancy).  Defendant discriminated against Plaintiff MAYLONI based on her sex/pregnancy in violation of the WLAD when, upon learning of MAYLONI's second pregnancy on October 9, 2015, terminated her employment on Oct. 15, 2015.  Additionally, Defendant discriminated against Plaintiff MAYLONI based on her sex/pregnancy in violation of the WLAD when, in early March 2015, WHBE failed to promote Plaintiff MAYLONI to a position for which she was most qualified in favor of co-workers who were not disabled and not on FMLA-approved maternity leave – this was all despite Plaintiff MAYLONI's consistent dedication to the mission, values and high work standards at WHBE.  WHBE's Ms. Erickson informed Plaintiff MAYLONI that the position she had applied for (for which she was the most qualified candidate) was offered to two candidates based on what WHBE claimed to be their "experience and demonstrated abilities

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

to perform the functions of this position."  However, both candidates, had been hired as entry-level "project temps" in the role of Eligibility Specialist in November 2014, and had been trained and directly managed by Plaintiff MAYLONI for the duration of their employment at WHBE.

6.44    Additionally, Defendant violated the WLAD by stripping core job duties from Plaintiff MAYLONI's position upon her return from maternity leave in March 2015. Washington employers must also return the woman to the same job or a "similar job of at least the same pay" after taking leave for disability relating to pregnancy or childbirth. WAC 162-30-020(4)(c).

6.45    Defendant discriminated against Plaintiff MAYLONI based on her sex (pregnancy) in violation of the WLAD.

<u>TITLE VII AND THE PDA</u>

6.46    Congress enacted the Pregnancy Discrimination Act (PDA) in 1978 to make clear that discrimination based on pregnancy, childbirth, or related medical conditions is a form of sex discrimination prohibited by Title VII of the Civil Rights Act of 1964 (Title VII). 42 U.S.C. § 2000e(k).  Thus, the PDA extended to pregnancy Title VII's goals of "[achieving] equality of employment opportunities and remov[ing] barriers that have operated in the past to favor an identifiable group of . . . employees over other employees." *See Young v. United Parcel Service, Inc*., 575 U.S. __, 135 S.Ct. 1338, 191 L.Ed.2d 279, 83 U.S.L.W. 4196, 25 Fla.L.Weekly Fed. S 155 (2015).

6.47    In passing the PDA, Congress intended to prohibit discrimination based on "the whole range of matters concerning the childbearing process," and gave women "the right . . . to be financially and legally protected before, during, and after [their] pregnancies." H.R. Rep.

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

No. 95-948, 95th Cong., 2d Sess. 5, *reprinted in* 5 U.S.C.C.A.N. 4749, 4753 (1978).  Thus, the PDA covers all aspects of pregnancy and all aspects of employment, including hiring, firing, promotion, health insurance benefits, and treatment in comparison with non-pregnant persons similar in their ability or inability to work.

6.48    The PDA defines discrimination because of sex to include discrimination because of or on the basis of pregnancy. As with other claims of discrimination under Title VII, an employer will be found to have discriminated on the basis of pregnancy if an employee's pregnancy, childbirth, or related medical condition was all or part of the motivation for an employment decision.  The most familiar form of pregnancy discrimination is, like the present case, discrimination against an employee based on her current pregnancy. Such discrimination occurs when an employer refuses to hire, fires, or takes any other adverse action against a woman because she is pregnant, without regard to her ability to perform the duties of the job.  *See EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 948 (10th Cir. 1992) (clear language of PDA requires comparison between pregnant and non-pregnant workers, not between men and women); *see also Palmer v. Pioneer Inn Assocs., Ltd*., 338 F.3d 981, 985 (9th Cir. 2003) (employer not entitled to summary judgment where plaintiff testified that supervisor told her that he withdrew his job offer to plaintiff because the company manager did not want to hire a pregnant woman)

6.49    Close timing between the challenged action and the employer's knowledge of the employee's pregnancy, childbirth, or related medical condition.  In *Asmo v. Keane, Inc.*, 471 F.3d 588, 593-94 (6th Cir. 2006), a two-month period between the time the employer learned of the plaintiff's pregnancy and the time it decided to discharge her raised an inference that the plaintiff's pregnancy and discharge were causally linked.

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

6.50    Here, Defendant violated Title VII, as amended by the PDA, when it fired Plaintiff MAYLONI because she was pregnant with her second baby, without regard to her ability to perform the duties of her job at WHBE.   Moreover, there exists a causal link between the challenged action (WHBE terminating Plaintiff MAYLONI'S employment) and WHBE's knowledge of Plaintiff MAYLONI's second pregnancy and related medical condition (her pregnancy's exacerbation of her epilepsy symptoms).

<u>Damages under Title VII</u>

6.51    Plaintiff MAYLONI is entitled to and will seek all available remedies under Title VII against Defendant, including but not limited to compensatory damages, punitive damages, back pay, lost future earnings, attorney's fees, and reasonable expert witness fees. Back pay consists of wages, salary and fringe benefits the employee would have earned during the period of discrimination to the date of trial.

## **FIFTH CAUSE OF ACTION**

RETALIATION IN VIOLATION OF WLAD (RCW 49.60) and TITLE VII
Discrimination Against Person Opposing Unfair Practice
Protected by WLAD or TITLE VII

6.52    Defendant's conduct alleged herein constitutes retaliation in violation of RCW 49.60.210(1), which prohibits an employer from discriminating against an employee because he/she has opposed discriminatory practice.

6.53    The Defendant's conduct alleged herein constitutes retaliation in violation of 42 U.S.C. § 2000e-3(a), which prohibits an employer from discriminating against an employee because he/she has opposed discriminatory practice.

6.54    Plaintiff MAYLONI engaged in protected activity when she filed a Discrimination and Harassment complaint with Ms. Steele against Ms. Erickson on December

COMPLAINT FOR DAMAGES - 34
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

11, 2014; Plaintiff then became protected from retaliation pursuant to 42 U.S.C. § 2000e-3(a) and RCW 49.60.210(1).

6.55    Following her protected activity of filing a complaint of Discrimination and Harassment against WHBE on December 11, 2014, Defendant's treated Plaintiff <u>worse</u> than other similarly situated WHBE employees outside of Plaintiff MAYLONI's protected classes (*i.e.*, persons who were not disabled and who were not a pregnant woman).  Defendant's retaliatory adverse actions against Plaintiff MAYLONI after she complained about workplace harassment and discrimination from Defendant include, but are not limited to:

a.  On March 1, 2015, Plaintiff MAYLONI was passed over for a promotion by WHBE to two available positions, in favor of far less qualified, temporary employees who were outside of Plaintiff MAYLONI'S protected classes (i.e., the persons that WHBE hired into these two roles instead of Plaintiff MAYLONI were both not disabled at the time of promotion and neither person was a pregnant woman);

b.  On March 31, 2015, Plaintiff MAYLONI received an unfounded negative Employee Review from WHBE, immediately following her return from maternity leave.  The negative performance review was a surprise to Plaintiff MAYLONI, given that she had never received even so much as a negative comment from WHBE, much less a negative review since her hire date. Plaintiff MAYLONI had consistently earned positive and/or "exceeds expectations" performance evaluations from WHBE.  The performance review was unfounded, providing no tangible examples of how and why Plaintiff MAYLONI had not performed her job duties at

COMPLAINT FOR DAMAGES - 35
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

or above WHBE's expectations.  The performance review was pretextual for the discriminatory animus of WHBE management against Plaintiff MAYLONI. Defendant WHBE's stated reasons for its retaliatory negative performance review of Plaintiff MAYLONI were not the true reasons for its actions, but instead were pretext to hide Defendant's discriminatory animus towards Plaintiff.

c.   Upon her return from maternity leave on March 30, 2015, key job responsibilities that Plaintiff MAYLONI had excelled at (and even trained other employees on before her maternity leave), were permanently reassigned by WHBE to MAYLONI's co-workers.  This significant and permanent demotion of Plaintiff MAYLONI's job duties by WHBE was communicated to her immediately. Plaintiff MAYLONI did not expect to have 100% of her job duties reinstated upon return from maternity leave, but she also didn't expect that any reassignment of her core duties would be "permanent," as communicated to her by WHBE immediately upon her return from maternity leave.

d.   On October 15, 2015, WHBE ended Plaintiff MAYLONI's proven-successful ADA work-from-home accommodation and abruptly terminated Plaintiff MAYLONI's employment, without discussion (interactive or otherwise) regarding possible alternative accommodations for Plaintiff MAYLONI's epilepsy disability, symptoms of which were exacerbated by her second pregnancy.  This was despite WHBE reporting to Plaintiff MAYLONI on August 13, 2015, that her work productivity with WHBE has increased tremendously as a result of the

COMPLAINT FOR DAMAGES - 36
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

accommodation and that the accommodation was, in Nancy Steele's words, "viewed as a success by the agency."

6.56    Defendant's stated reasons for its adverse actions against Plaintiff MAYLONI, as alleged above, were not the true reasons for their actions, but rather were pretext to hide the Defendant's discriminatory animus towards Plaintiff MAYLONI.

6.57    Defendant's unlawful Retaliation against Plaintiff MAYLONI in violation of 42 U.S.C. § 2000e-3(a) and RCW 49.60.210(1) provides Plaintiff MAYLONI remedies including, but not limited to, an award of compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, back pay, reasonable attorney's fees and costs of bringing suit.

## VII. RELIEF REQUESTED

7.1    Plaintiff MAYLONI hereby realleges the substance of paragraphs I, II, III, IV, V, and VI with the same force and effect as though fully set forth herein.

7.2    Because of the Defendant's wrongful acts described above, Plaintiff MAYLONI has suffered loss of wages, lost future income, lost earning ability, lost fringe benefits, substantial humiliation, mental and emotional distress, and other damages to be proved at trial.

WHEREFORE, Plaintiff MAYLONI respectfully requests this Court grant her relief, including

    a.  Back pay for an amount to be proved at trial;

    b.  Damages for future loss, emotional distress, pain & suffering, inconvenience, mental anguish & loss of enjoyment of life and any medical

COMPLAINT FOR DAMAGES - 37
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782

expenses flowing therefrom, in an amount to be proved at trial;

      c.  Punitive damages because Defendant engaged in discriminatory practices against Plaintiff with malice or with reckless indifference. *See* 42 U.S.C. § 1981(a)(2) (providing for recovery of compensatory and punitive damages against defendant who violates § 102(b)(5) of ADA (42 U.S.C. § 12112(b)(5)) by failing to make reasonable accommodation)

      d.  The Plaintiff's reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 626(b), and RCW 49.60.030(2);

      e.  Costs of suit as provided by 42 U.S.C. § 2000e-5(g) and RCW 49.60.030(2).

      f.  Prejudgment interest at the highest lawful rate;

      g.  Tax consequences;

      h.  Lost fringe benefits; and

      i.  Such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

DATED this 27th day of October, 2017.

HENDERSON LAW GROUP, PLLC

By:    s/ Stephanie Stocker_____
       Stephanie Stocker WSBA #33567
       P.O. Box 11069
       Olympia, WA 98508
       Phone: (360) 943-7710
       Fax: (360) 943-2782
       Email:  stephanie@hendersonlaw.net
       *Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES - 38
(Case No. 3:17-cv-5880)

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point Road S.W., Bldg. 1
Olympia, Washington 98508
Phone (360) 943-7710   Fax (360) 943-2782